VAN IDERSTINE CO., INC., Respondent, *v.* BARNET LEATHER CO., INC., Appellant.

Contract — sale — evidence — Statute of Frauds — waiver — charge — time specified in written contract for delivery cannot be changed orally — testimony of oral agreement to extend time for delivery of portion of merchandise admissible on question of waiver of right to regard contract as no longer in force — stipulation in contract for approval of goods by designated broker waived where buyer refused to accept goods tendered even if approved by expert — erroneous charge that if approval by expert was unreasonably withheld plaintiff could recover, whether or not defendant had anything to do with it — no recovery for goods rejected by expert unless approval was withheld dishonestly and in bad faith and defendant was party thereto.

1. While, under the Statute of Frauds, an alleged conversation could not result in the substitution of a different time for delivery of merchandise than that which had been agreed upon in writing, nevertheless, in an action to recover because of the purchaser's refusal to accept merchandise which the seller offered to deliver, testimony that at or about the time of a partial delivery, it was mutually agreed, in conversation, that time for delivery of the remainder should be extended, is admissible. While the buyer had the right to refuse to accept merchandise tendered in violation of the terms of the contract he was not bound to do so. He might choose to keep the contract alive and waive the right to regard it as no longer in force.

2. A stipulation in the contract that the merchandise was to be delivered and received subject to the approval of a designated broker, acting as expert, constitutes a condition which unless waived or excused must be fulfilled before the buyer can be compelled to accept merchandise tendered, but such condition was as matter of law waived by the buyer in regard to merchandise tendered, which it refused to accept even if approved by the expert.

3. A charge by the trial judge that if approval by the expert was unreasonably withheld, whether defendant had anything to do with it or not, the plaintiff could recover, was erroneous. Defendant stipulated not merely for goods of a certain quality but for goods of that quality approved by a particular expert and unless approval has been withheld dishonestly and in bad faith, and the defendant is a party to that bad faith through control of the expert or collusion

with him, there may be no recovery for goods tendered and rejected by the expert. (*Bowery Nat. Bank* v. *Mayor, etc.*, 63 N. Y. 336; *Mac Knight Flintic Stone Co.* v. *Mayor, etc.*, 160 N. Y. 72, distinguished.)

4. Proof of fraud may sometimes be made by circumstantial evidence and circumstances insignificant in themselves may acquire probative force as links in the chain of circumstantial proof.

*Van Iderstine Co.* v. *Barnet Leather Co.*, 213 App. Div. 876, reversed.

(Argued February 25, 1926; decided May 4, 1926.)

Appeal, by permission, from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered April 16, 1925, unanimously affirming a judgment in favor of plaintiff entered upon a verdict.

*Louis Marshall, Monroe J. Cahn* and *Edward B. Levy* for appellant. It was error for the trial court to rule that the alleged oral agreement of extension of the time of delivery under the original contract was not void under the Statute of Frauds. (*Norrington* v. *Wright*, 115 U. S. 188; *Clark* v. *Fey*, 121 N. Y. 470; *Hill* v. *Blake*, 97 N. Y. 216; *Imperator Realty Co.* v. *Tull*, 228 N. Y. 454; *Davison Coal Co.* v. *Weston, Dodson & Co.*, 209 App. Div. 517; *Morris* v. *Baron & Co.*, 1918 A. C. 1; *Maddeloni Olive Oil Co., Inc.,* v. *Aquino*, 191 App. Div. 51; *Albert* v. *Newtown Creek Realty Corp.*, 211 App. Div. 4.) The respondent's contention that the provision of the contract of August 12, 1920, which provided for " delivery beginning week of August 16th," authorized a tender of delivery thereunder of 3,500 skins two months later, either on the theory that such tender was made within a reasonable time or because of an alleged custom in the trade, is unsound. (*Vedder* v. *Fellows*, 20 N. Y. 126; *Avery* v. *N. Y. C. & H. R. R. R. Co.*, 121 N. Y. 44; *Walls* v. *Bailey*, 49 N. Y. 464; *Rickerson* v. *Hartford Fire Ins. Co.*, 149 N. Y. 307; *Cassin* v. *Stillman-Delehanty-Ferris Co.*, 185 App. Div. 63; *McDonald* v. *Acker, M. & C. Co.,* 192 App. Div. 123; *Ford* v. *Snook*, 205 App. Div. 194; *Kane* v. *Jaretzki*, 119 Misc. Rep. 419.) The

court erred in charging the jury, in substance, that if Jules Star & Co. unreasonably withheld their approval of the 6,000 skins which were the subject of the second contract, whether the defendant had anything to do with such disapproval or not, the plaintiff could nevertheless recover. (2 Williston on Contracts, 1525; *Fudickar* v. *Guardian Mut. Life Ins. Co.,* 62 N. Y. 392; *Matter of Wilkins,* 169 N. Y. 494; *Wilhelm* v. *Wood,* 151 App. Div. 42; *Goff & Sons* v. *Rheinauer,* 199 App. Div. 617; *Kihlberg* v. *United States,* 97 U. S. 398; *Chicago, S. F. & C. R. R. Co.* v. *Price,* 138 U. S. 185; *Cope* v. *Beaumont,* 181 Fed. Rep. 756; *Sullivan Co.* v. *Wingerath,* 203 Fed. Rep. 460; *Robinson* v. *United States,* 251 Fed. Rep. 461.) The trial court erred in admitting in evidence the bid by defendant on the 3,500 skins tendered under the alleged oral extension agreement of the first contract, and the telegram from Jules Star & Co. to Severin, for the purpose of establishing a conspiracy between defendant and Star for the rejection of the skins tendered under the second contract. (*Ross* v. *Ackerman,* 46 N. Y. 210; *Booth* v. *Powers,* 56 N. Y. 22; *Dorwin* v. *Westbrook,* 86 Hun, 363; *McLoghlin* v. *National Mohawk Valley Bank,* 139 N. Y. 514; *People* v. *Sharp,* 107 N. Y. 427; *People* v. *Molineux,* 168 N. Y. 264; *Mance* v. *Hossington,* 205 N. Y. 33; *Matter of Jones & Co.,* 117 App. Div. 775; *People* v. *McLaughlin,* 150 N. Y. 385.)

*Eugene W. Leake* for respondent. Proof of the oral agreement with regard to the time for delivery of the balance of the skins due under the first contract was properly admitted. (*Imperator Realty Co.* v. *Tull,* 228 N. Y. 447; *Seaside Home* v. *Atlantic Beach Associates,* 241 N. Y. 48; *Gumbinsky Bros. Co.* v. *Smalley,* 203 App. Div. 661; 235 N. Y. 619; *Portfolio* v. *Rubin,* 196 App. Div. 316; 233 N. Y. 439; *Lowinson* v. *Newman,* 201 App. Div. 266; *Beakes* v. *DeCunha,* 126 N. Y. 293; *Eppens, Smith & Wiemann Co.* v. *Littlejohn,* 164 N. Y.

187.) Plaintiff having relied and acted upon the oral agreement, defendant was estopped from asserting that the tender was not made within the time fixed by the contract. (*Thompson* v. *Poor*, 147 N. Y. 402; *Arnot* v. *Union Salt Co.*, 186 N. Y. 501; *Imperator Realty Co.* v. *Tull*, 228 N. Y. 447; *Holden* v. *Efficient Craftsman Corp.*, 234 N. Y. 437; *Lieberman* v. *Templar Motor Co.*, 236 N. Y. 139.) Appellant's futile attempt to establish a custom, which it improperly charges to respondent, and the conflicting inferences from the undisputed facts, required the submission to the jury of the question whether the 3,500 skins under the first contract were tendered within a reasonable time. (*Eppens, Smith & Wiemann Co.* v. *Littlejohn*, 164 N. Y. 187, 191; *Pierson* v. *Crooks*, 115 N. Y. 539; *Schnitzer* v. *Lang*, 239 N. Y. 1; *Gracien* v. *Pohlman*, 191 N. Y. 493; *McCarthy* v. *Natural Carbonic Gas Co.*, 189 N. Y. 40.) The jury were properly instructed as to the legal effect of the contract provision requiring the approval of Jules Star & Co. (*Bowery Nat. Bank* v. *Mayor, etc.*, 63 N. Y. 336; *McKnight* v. *Mayor, etc.*, 160 N. Y. 72; *Vought* v. *Williams*, 120 N. Y. 253; *Thomas* v. *Stewart*, 132 N. Y. 580; *MacKnight Flintic Stone Co.* v. *Mayor, etc.*, 160 N. Y. 72; *Nolan* v. *Whitney*, 88 N. Y. 648; *Smith* v. *Wetmore*, 41 App. Div. 290; *Crane Elevator* v. *Clark*, 88 Fed. Rep. 705; *Bush* v. *Jones*, 144 Fed. Rep. 942.) There was no error in the reception of evidence. (*Baird* v. *Daly*, 68 N. Y. 547; *Mayer* v. *People*, 80 N. Y. 364; *Spaulding* v. *Keyes*, 125 N. Y. 113; *People* v. *Peckens*, 153 N. Y. 576; *People* v. *Dolan*, 186 N. Y. 4; *Castle* v. *Bullard*, 23 How. [U. S.] 172; *Holmes* v. *Goldsmith*, 147 U. S. 150; *White* v. *Benjamin*, 150 N. Y. 258.)

Lehman, J. On or about August 12th, 1920, the plaintiff and the defendant entered into a contract for the sale of 15,000 vealskins, delivery thereof to be made "beginning week of August 16th." The contract was

made upon condition that the skins were " to be received by Jules Star & Co.'s representative subject to their approval." On September 10th, 1920, the parties entered into another contract for the sale of 6,000 vealskins, delivery to be made in September, " to be received by Jules Star & Co. subject to their approval." On or about August 16th a representative of Jules Star & Co. examined 15,000 vealskins tendered by the plaintiff in performance of its contract of sale of August 12th, and rejected 3,500 of such skins. It is not disputed that such rejection was justified. In October the plaintiff notified the defendant that it was ready to deliver 3,500 skins in substitution for those previously rejected. The defendant refused to accept or even examine the same on the ground that the time for delivery had expired. About the same time, Jules Star & Co. rejected the entire quantity of 6,000 skins which the plaintiff tendered in attempted performance of its contract of September 10th, 1920, and defendant refused to accept them.

The plaintiff has brought this action to recover damages suffered because of the defendant's refusal to accept the skins which plaintiff offered to deliver. In the first cause of action for failure to accept the 3,500 skins under the contract of August 12th, 1920, the plaintiff alleges that at or about the time of the delivery to defendant of 11,500 skins in August " it was mutually agreed between the plaintiff and defendant that the time for delivery of the remaining 3,500 vealskins called for by said Exhibit A should be extended until such time as plaintiff, in the usual course of its business, should have collected that number of its skins." In the second cause of action as amended at the trial the plaintiff alleged that any condition for approval by a representative of Jules Star & Co. of the skins to be delivered under the contract of September 10th was waived and excused because the approval was unreasonably withheld, and because defendant prevented Jules Star & Co. from giving such approval

and "because defendant and said Jules Star & Co. wrong-fully and knowingly colluded to withhold that approval, with intent to avoid defendant's having to accept the said skins." The issues raised by the denial to these allegations were submitted to the jury and decided in favor of the plaintiff.

The alleged agreement set forth in the first cause of action to extend the time for the delivery of 3,500 skins in substitution for those rejected under the first cause of action was not in writing, and it is urged that con-sequently it was unenforcible under the Statute of Frauds. The alleged conversation could not result in the substitution of a different time for delivery of the vealskins from that which had been agreed upon in writing. The Statute of Frauds would render an oral agreement changing any term of the written contract ineffectual. (*Imperator Realty Co.* v. *Tull,* 228 N. Y. 447; *Davison Coal Co.* v. *Weston, Dodson & Co.,* 209 App. Div. 514, 517; affd., 240 N. Y. 705.) Nevertheless such conversation may not be entirely disregarded. The written contract provided for deliveries " beginning week of August 16th." The conversation at least evidences that the parties understood that under the provision of the contract that deliveries should be made " *beginning* week of August 16th," the plaintiff should have a reason-able time to complete delivery of skins which Jules Star & Co. would accept, though approval had been withheld from some skins previously tendered. In that aspect the conversation might have the effect of placing a limit upon what would constitute reasonable time as under-stood by the parties. (*Eppens, Smith & Wiemann Co.* v. *Littlejohn,* 164 N. Y. 187.)

The intention of the parties as set forth in the written contract as to whether or not the seller should have reasonable time to substitute other skins for those rejected seems under the circumstances of the case to present a question of fact. Even if that question is resolved

against the seller, it does not follow that the buyer could not waive, or elect not to take advantage of a partial breach resulting from failure to tender the full quantity of satisfactory skins or that the conversation could not be proven to show such election. If the seller under the contract was obligated to deliver 15,000 skins subject to the approval of Jules Star & Co. without right of substitution for rejected skins, the buyer, of course, had the right to refuse to accept skins tendered after the original tender of 15,000 skins. He was not bound to do so. He might still choose to keep the contract alive in order to enable the seller to make delivery of the full stipulated number of approved skins. If the conversation was had as alleged, it shows that the buyer did elect to keep the contract alive in spite of known excuse justifying refusal to proceed further. The seller concurred in that election, and thereafter the buyer could not assert that excuse as reason for rejection. (Williston on Contracts, sections 687 and 688.) We have recently pointed out that "sometimes distinction between a waiver of default, or an extension of the time for performance, and acts which enlarge definition of a 'reasonable time' as contemplated by the parties beyond the limits which might otherwise be set, is tenuous." (*Murray Co.* v. *Lidgerwood Mfg. Co.*, 241 N. Y. 455.) Here the conversation may not result in extension of time for delivery; it may result in waiver of right to regard the contract as no longer in force after partial failure to perform by the seller, and thereafter the seller could not be again placed in default until reasonable opportunity is afforded for performance.

Even though evidence was properly admitted as to the alleged conversation in regard to the delivery of the 3,500 skins which constitute the subject-matter of the first cause of action, there must be a new trial because in other respects error has crept into the record. We have pointed out that under both contracts sued upon, the

seller agreed to make delivery subject to the approval of Jules Star & Co. The parties chose to stipulate that such approval must be given. It constitutes a condition which unless waived or excused must be fulfilled before the buyer can be compelled to accept skins that are tendered. Concededly approval of Jules Star & Co. has not been given. The condition was as matter of law waived by the buyer in regard to the 3,500 skins referred to in the first cause of action, when the buyer refused to accept any skins even if approved by Jules Star & Co. Of course, the condition was waived also in regard to the contract which forms the basis of the second cause of action if refusal of approval by Jules Star & Co. was the result of bad faith on the part of Jules Star & Co. in which the defendant had some share. If by its own interference and wrong the defendant prevented the plaintiff from obtaining the stipulated approval, then the plaintiff may recover without it. We have pointed out that in the second cause of action the plaintiff has pleaded that the condition was waived and excused not only because of wrongful act on the part of the defendant but because approval was " unreasonably withheld," and the serious question raised upon this appeal is whether the plaintiff may recover under its contract upon proof that it offered to deliver skins which in quality complied with the contract requirements, and that the representative of Jules Star & Co. unreasonably withheld its approval of these skins.

The trial judge charged that if " approval was unreasonably withheld, whether Barnet had anything to do with it or not, the plaintiff could recover. Star must have acted honestly. If he showed an honest judgment the defendant is entitled to a verdict." Though the parties have stipulated that the approval of Jules Star & Co. must be obtained for any skins delivered under the contract, under the rule laid down in the charge, the plaintiff may become liable for damages if he insists upon

this stipulation being carried out. It places upon the buyer the risk of determining whether Jules Star & Co. have acted reasonably; it makes the buyer determine whether approval should reasonably have been given, though not he but Jules Star & Co. were to approve of the quality of the skins. In effect it makes the buyer a guarantor of both the honesty and the good judgment of Jules Star & Co.

It is said that authority for the rule laid down in the charge may be found in many cases in this and other jurisdictions where the courts have considered the effect of unreasonable or dishonest refusal of architect or engineer to approve of work done or materials furnished, under building contracts when such approval was made a condition precedent to payment. (*Bowery National Bank* v. *Mayor, etc.*, 63 N. Y. 336; *MacKnight Flintic Stone Co.* v. *Mayor, etc.*, 160 N. Y. 72.) In those cases it must be remembered that by the nature of the contracts, if failure to obtain approval deprived the contractor of right to recover the agreed compensation the result would be that the benefit of work actually performed and materials actually furnished could be appropriated by the owner without payment, though in other respects the contractor had fully complied with his contract. It would cause forfeiture of agreed price for agreed service without any fault on the contractor's part. In the same manner as the courts have evolved the rule that under contracts of that nature there may be recovery for substantial performance, they have evolved a rule which permits recovery without stipulated certificate of approval where the certificate has been wrongfully or unreasonably refused. (*Nolan* v. *Whitney*, 88 N. Y. 648.) So, too, in some cases where the contract shows that the person whose approval is required under the contract is merely an agent of a buyer selected by the buyer to pass upon the goods in the buyer's place, wrong

28

on the part of the agent is imputed to the principal. (*Lynn* v. *Baltimore, etc., R. R. Co.,* 60 Md. 404.) Here the contract is of different nature. The parties agree that a designated broker acting as expert and not simply as the buyer's agent must pass upon the goods and delivery must be made subject to the expert's approval. Refusal to approve by the expert does not enable the buyer to obtain property from the seller without payment. According to the terms of the contract it merely permits him to refuse to accept the goods because he stipulated not merely for goods of a certain quality but for goods of that quality approved by a particular expert. To compel him to accept and pay for the goods without such approval is to impose liability upon him which he had not agreed to assume, and gives compensation to the seller for goods not delivered in full compliance with contract. The theoretical soundness of the rule applied to building contracts has not escaped criticism. It rests upon the basis that enforcement of the contract according to its strict terms would cause forfeiture of compensation for work done or materials furnished. The rule should not be extended by analogy where the reason for the rule fails. (See Williston on Contracts, sections 794–797.) Unless the certificate has been withheld dishonestly and in bad faith, and the defendant is a party to that bad faith through control of the expert or collusion with him, there may be no recovery under the second cause of action.

There are cases where parties stipulate for the approval or certificate of a third person not as part of the contractual obligation of either party to the contract but rather as machinery for avoiding dispute between the parties as to whether these obligations have been properly performed. Question may then arise as to whether the stipulated approval or certificate constitutes in full sense a condition precedent to recovery, or whether there may be recovery based on substantial performance, upon proof that in other

respects the contract has been fully complied with. Such question we do not now decide. Doubtless there are cases where such hardship would be imposed upon a party who performs work or manufactures goods at the special instance of another if payment were withheld merely because approval is wrongfully refused, that argument may well be made that such result was not intended by the parties. Here we have no such circumstances. The plaintiff's obligation is only to deliver certain goods, and by express stipulation there may be no delivery without approval of a third party. It has done nothing for which it might legally or equitably expect compensation until delivery is made. If approval is withheld the plaintiff cannot perform; it loses the profit which it might have otherwise made by delivery of goods at a contract price higher than the then prevailing market price. It assumed this risk. It still retains the goods and may sell them at market price. The defendant should not be required to pay the contract price unless the plaintiff performs according to contract " subject to the approval " of the third party.

It is also urged that the trial judge erred in the admission of certain evidence. Proof of fraud may sometimes be made by circumstantial evidence. Circumstances insignificant in themselves may acquire probative force as links in the chain of circumstantial proof. The majority of the court is of opinion that the evidence admitted over objections may have some relevancy, and that the jury might properly consider it in connection with all the other evidence.

The judgments should be reversed and a new trial granted, with costs to abide the event.

CARDOZO, POUND and ANDREWS, JJ., concur; HISCOCK, Ch. J., MCLAUGHLIN and CRANE, JJ., dissent.

Judgments reversed, etc.